IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILFREDA BALGASO,<br>VIRGILIO BALAGSO, JR.<br><br>          Plaintiffs,<br><br>     vs.<br><br>AURORA LOAN SERVICES, LLC,<br>BNC MORTGAGE INC.,<br>DANA CAPITAL GROUP, INC.,<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 11-00029 SOM/BMK<br><br>ORDER GRANTING DEFENDANTS<br>AURORA LOAN SERVICES, LLC,<br>AND MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS' MOTION<br>TO DISMISS AND PARTIALLY<br>DISMISSING CLAIMS AGAINST<br>NONMOVING DEFENDANTS <u>SUA</u><br><u>SPONTE</u> |

ORDER GRANTING DEFENDANTS AURORA LOAN SERVICES, LLC,
AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS'
MOTION TO DISMISS AND PARTIALLY DISMISSING CLAIMS
<u>AGAINST NONMOVING DEFENDANTS SUA SPONTE</u>

I.      <u>INTRODUCTION.</u>

Plaintiffs Wilfreda Balagso and Virgilio Balagso, Jr. assert federal and state law claims against several entities that participated in the origination, settlement, and servicing of their mortgage and loan, including Defendants Aurora Loan Services, LLC ("Aurora"), BNC Mortgage Inc. ("BNC"), Dana Capital Group, Inc. ("Dana Capital"), and Mortgage Electronic Registration Systems ("MERS").  The transaction occurred in September 2006.

Aurora and MERS now seek dismissal of all counts.  For the reasons set forth in this order, the court GRANTS the motion and dismisses the Complaint with leave to amend as to certain counts.  Given obvious pleading defects applicable to all

Defendants, the court also <u>sua sponte</u> dismisses the majority of claims against other Defendants.

II.     <u>FACTUAL BACKGROUND.</u>

        The Balagsos allege that they obtained a loan from Dana Capital for $531,000 on or about September 23, 2006.  Compl. ¶ 2, ECF No. 1.[1]  The mortgage document itself, however, indicates that BNC was the lender.  <u>See</u> ECF No. 17, Ex. C.  Aurora is allegedly a debt collector, <u>see</u> Compl. ¶ 3, and Dana Capital the original broker and servicing company, <u>see</u> Compl. ¶ 4.  The Balagsos allege that the loan transaction refinanced a loan involving property in Waikoloa, Hawaii.  Compl. ¶¶ 1, 2.

        The Balagsos recite, in general terms,[2] that mortgage brokers and lenders have engaged in predatory lending practices and that their loan was in fact a predatory lending transaction. <u>See, e.g.</u>, Compl. ¶¶ 19-20.  The Balagsos allege that Defendants

_____

        [1] Aurora and MERS ask the court to take judicial notice of the mortgage document relevant to Plaintiffs' claims against them.  <u>See</u> Aurora and MERS Mot. at 2 n.1, ECF No. 17.  Because Plaintiffs raise no challenge to the authenticity of the mortgage document found in Aurora and MERS's Exhibit C, which is a public document, the court takes judicial notice of it.  <u>See</u> <u>Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988) (providing that a court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of a motion to dismiss") (quotations omitted).

        [2] In fact, this Complaint appears to be nearly identical in form to several other complaints filed by <u>pro se</u> plaintiffs in this court, all asserting the same twelve causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC. <u>See</u> <u>Asao v. Citi Mortgage, Inc.</u>, Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011) (citing several identical complaints).

2

"intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff[s] face[] the potential of losing their home to the very entity and entities who placed them in this position." Compl. ¶ 20 at 6:9-11.

The Complaint asserts that the loan terms were "not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff[s]'s Income and Liabilities." Compl. ¶ 23. The Complaint alleges that Dana Capital failed to verify the Balagsos' prior or current income or their employment. Compl. ¶ 28. The Complaint also asserts that the terms of the loan were such that the Balagsos "can never realistically repay the loan," and that Defendants knowingly made it impossible for the Balagsos to ever own the subject property free and clear. Compl. ¶ 23 at 7:10; see also Compl. ¶ 29. According to the Complaint, Defendants failed to explain the "workings" of the mortgage transaction to the Balagsos. Compl. ¶ 31.

The Balagsos allege that Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667, by failing to issue initial disclosures, a correct payment schedule, their proper interest rate, an accurate Good Faith Estimate, or a "CHARM booklet." Compl. ¶¶ 62-65. The Balagsos also allege that they received egregious loans that required them to pay unjustified interest rates, in violation of the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. Compl. ¶ 75.

The Complaint asserts the following causes of action against all Defendants: (1) declaratory relief; (2) injunctive relief; (3) breach of implied covenant of good faith and fair dealing; (4) violations of TILA; (5) violations of RESPA; (6) rescission; (7) unfair and deceptive business practices; (8) breach of fiduciary duty; (9) unconscionability; (10) predatory lending; (11) quiet title. Compl. ¶¶ 44-116. The Complaint also asserts as a twelfth cause of action, solely against MERS, "Lack of Standing; Improper Fictitious Entity." Compl. ¶¶ 117-24. The Balagsos seek declaratory relief, an injunction enjoining foreclosure, quiet title, rescission of the loan, damages, and attorney's fees. Compl. at p.26.

On April 4, 2011, Aurora and MERS filed a motion to dismiss. ECF No. 17. Neither BNC Mortgage nor Dana Capital has entered an appearance in this case. Pursuant to Local Rule 7.2(d), this court finds this matter suitable for disposition without a hearing.

III.     STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint, or a claim therein, when a claimant fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) may be based on either:

(1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007); see Evanns v. AT&T Corp., 229 F.3d 837, 839 (9th Cir. 2000).

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973

(9th Cir. 2004).

In particular, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1950. The court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Id.</u> at 1949. After eliminating such unsupported legal conclusions, the court must identify "well-pleaded factual allegations," which are assumed to be true, "and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 1950.

IV.      <u>ANALYSIS.</u>

Aurora and MERS raise a myriad of challenges to the Complaint. They argue that the Complaint fails to identify sufficiently specific allegations against them, that the allegations allege fraudulent conduct without sufficient particularity, and that each of the twelve causes of action fails for various reasons.[3]  <u>See generally</u> Mem. Supp. Mot. ("Mot.") at

---

[3] The Complaint also mentions the Equal Opportunity Credit Act, Compl. ¶ 13; the "Fair Lending/Fair Debt Collection Act," <u>id.</u>; and the Federal Trade Commission Act, <u>id.</u> ¶ 42. The Balagsos, however, assert no claims for relief (i.e., no counts) for any alleged violations of those federal laws. The Complaint as written fails to state a claim for violations of those statutes. <u>Cf.</u> <u>Bautista v. Los Angeles Cnty.</u>, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

8-39, ECF No. 17.  The court first addresses the global attacks
on the Complaint, then turns to the arguments as to each specific
Count.  Because of the similarity between the Complaints, and the
respective Defendants' motions to dismiss, portions of the
court's analysis here draw heavily from its analyses in Radford,
Casino, and Asao.  See Radford v. Wells Fargo Bank, Civ. No. 10-
00767 SOM/KSC, 2011 WL 1833020 (D. Haw. May 13, 2011); Casino v.
Bank of Am., Civ No. 10-00728 SOM/BMK, 2011 WL 1704100 (D. Haw.
May 4, 2011); Asao v. Citi Mortgage, Inc., Civ. No. 10-00553
SOM/KSC (D. Haw. Apr. 28, 2011).

　　　　In their Opposition, the Balagsos fail to respond to
many of Defendants' arguments in the motion to dismiss.  Instead,
the Balagsos make new allegations and assert new claims, which
this court cannot consider in the present order because
Defendants were not on notice of them.  See Sakala v. BAC Home
Loans Serv., Civ. No. 10-00578 DAE-LEK, 2011 WL 719482, at *5 (D.
Haw. Feb. 22, 2011).  An opposition to a motion to dismiss is not
a proper vehicle for adding claims to a complaint.  See Schneider
v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)
("In determining the propriety of a Rule 12(b)(6) dismissal, a
court may not look beyond the complaint to a plaintiff's moving
papers . . . .") (citations omitted); Clegg v. Cult Awareness
Network, 18 F.3d 752, 754 (9th Cir. 1994) (finding that for

purposes of a motion to dismiss, the court's review is limited to the contents of the complaint).

In the Opposition, the Balagsos for the first time assert causes of action for, among other things, negligent representation, unjust enrichment, and constructive trust, not mentioned in the Complaint. See Opp'n at 7-9. The Balagsos also appear to allege that Aurora committed wrongful acts with respect to TILA and RESPA by failing to respond to a qualified written request. Id. at 2-3. Because the Complaint, even liberally construed, does not raise any of these claims, they are disregarded for purposes of ruling on the instant Motion to Dismiss.

A.   Specificity of Allegations Against Aurora and MERS.

Rule 8(a) of the Federal Rules of Civil Procedure mandates a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule requires that "allegations in a complaint or counterclaim must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011). Failure to draft a complaint that complies with Rule 8 is grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. See Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Aurora and MERS argue that the allegations against them should be dismissed because the Complaint fails to allege specific wrongdoing by either Defendant.  Mot. at 8-9.  The court agrees that the Complaint largely lacks specificity.  For example, the Balagsos name Aurora in the caption of the Complaint, but never mention Aurora in the Complaint itself.

However, it appears from Aurora and MERS's motion to dismiss that they were able to sufficiently respond to the Complaint as drafted.  Therefore, the court does not rely on Rule 8 in this dismissal order.  However, the court counsels the Balagsos to ensure that any Amended Complaint they may file states, as specifically as they are able, the precise wrongdoing they allege on the part of each Defendant.  A complaint that fails to explain which allegations are relevant to which defendant is confusing.  This, in turn, "impose[s] unfair burdens on litigants and judges" because it requires both to waste time formulating their own best guesses of what the plaintiff may or may not have meant to assert, risking substantial confusion if their understanding is not equivalent to plaintiff's.  See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996).

B.   Whether the Complaint Alleges Fraud.

Aurora and MERS argue that the court should strip the Complaint of averments of fraud because the Complaint does not meet the particularity requirement of Rule 9(b) of the Federal

Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  They argue that, because multiple Defendants are involved, the Complaint is deficient; that is, it does not identify each Defendant's separate role in a fraudulent scheme and fails to give each Defendant notice of particular misconduct.  <u>See</u> Mot. at 9-11. <u>See also</u> <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989) (stating that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).  In short, Aurora and MERS argue that the Complaint fails to explain the "who, what, when, where, and how of the misconduct alleged."  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).

Although these arguments regarding lack of particularity might be correct, the Balagsos have not asserted a separate claim for fraud.  There simply is no fraud claim for the court to dismiss.  The Complaint does touch on fraudulent conduct in various counts (e.g., Count I, Compl. ¶ 45 ("fraudulent loan transaction"); Count III, Compl. ¶ 59 ("Defendants' actions in this matter have been . . . fraudulent"); Count IV, Compl. ¶ 70 (same)).  It does not, however, contain a Count asserting a state law claim for fraud.  The court therefore declines as a general matter to strip all "averments of fraud" from the Complaint.

Each count stands or falls on its own; if particularity is required for a specific count, the court will address that requirement in the context of that count.

The Balagsos did assert a claim for fraud in their Opposition, but this court has already stated that it will not consider any claim not in the original Complaint. If the Balagsos decide to include a fraud claim in an Amended Complaint, they must meet the heightened requirement for pleadings relating to fraud under Rule 9(b) of the Federal Rules of Civil Procedure.

### C. Counts I and II (Declaratory and Injunctive Relief).

Aurora and MERS contend that Count I (Declaratory Relief) and Count II (Injunctive Relief), as pled, fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action. The court agrees that these counts fail to state a claim. Mot. at 11-14.

Count I appears to seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[4] Count I alleges that "[a]n

_____

[4] The Declaratory Judgment Act provides in pertinent part:

a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

actual controversy has arisen and now exists between Plaintiff[s]
and Defendants regarding their respective rights and duties, in
that Plaintiff[s] further contend[] that Defendants did not have
the right to foreclose on the Subject Property." Compl. ¶ 45.
The Balagsos ask the court to declare that "the purported power
of sale contained in the Loan [is] of no force and effect at this
time" because of "numerous violations of State and Federal laws
designed to protect borrowers." Id. ¶ 46. The Complaint alleges
that, "[a]s a result of the Defendants' actions, Plaintiff[s]
ha[ve] suffered damages . . . and seek[] declaratory relief that
Defendants' purported power of sale is void." Id. ¶ 47.

        As pled, the Balagsos' declaratory relief claim is not
cognizable as an independent cause of action. See Seattle
Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A
declaratory judgment offers a means by which rights and
obligations may be adjudicated in cases brought by any interested
party involving an actual controversy that has not reached a
stage at which either party may seek a coercive remedy and in
cases where a party who could sue for coercive relief has not yet
done so.") (citation and quotation marks omitted). That is,
because the Balagsos' claims are based on allegations regarding
Defendants' past wrongs, a claim under the Declaratory Judgment
Act is improper and essentially duplicates the other causes of
action. See, e.g., Ballard v. Chase Bank USA, N.A., 2010 WL

5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (alteration in original, citation omitted); Ruiz v. Mortg. Elec. Registration Sys., Inc., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment when foreclosure had already occurred and the plaintiff was seeking "to redress past wrongs"); Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."); Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").

With respect to Count II, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. See, e.g., Henke v. Arco Midcon, L.L.C., 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action") (quotation marks and citation omitted); Plan Pros, Inc. v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); Motley v. Homecomings Fin., LLC,

13

557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if the Balagsos are entitled to such a remedy on an independent cause of action.

Accordingly, the court DISMISSES Counts I and II without leave to amend. If the Balagsos eventually prevail on an independent claim, the court will necessarily render a judgment setting forth (i.e., "declaring") as much and providing appropriate remedies. Similarly, if injunctive relief is proper, it will be because the Balagsos prevail (or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure) on an independent cause of action. Although only two Defendants have moved to dismiss, this dismissal is as to all Defendants because the Balagsos cannot prevail on these counts as to any Defendant. See Omar v. Sea-Land Serv. Inc., 813 F.2d 986, 991 (9th Cir. 1987).

> D. Count III (Covenant of Good Faith and Fair Dealing).

Count III asserts a "Contractual Breach of Implied Covenant of Good Faith and Fair Dealing." The Balagsos allege that every contract imposes a duty of good faith and fair dealing "in its performance and its enforcement," Compl. ¶ 54, and that "Defendants willfully breached their implied covenant of good faith and fair dealing" by engaging in the acts alleged in the Complaint (such as withholding disclosures or information, and

"willfully plac[ing] Plaintiffs in a loan that they did not
qualify for").  Id. ¶ 57.

        This claim in essence asserts the tort of "bad faith."
See Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920
P.2d 334, 342 (1996) (adopting tort of bad faith for breach of
implied covenant of good faith and fair dealing in an insurance
contract).  Although bad faith is an accepted tort when a
plaintiff is a party to an insurance contract, the tort has not
been recognized in Hawaii based on a mortgage loan contract.

        Moreover, although commercial contracts for sale of
goods also require good faith in their performance and
enforcement, this obligation does not create an independent cause
of action.  See Stoebner Motors, Inc. v. Automobili Lamborghini
S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).  Hawaii
courts have noted that "[o]ther jurisdictions recognizing the
tort of bad faith . . . limit such claims to the insurance
context or situations involving special relationships
characterized by elements of fiduciary responsibility, public
interest, and adhesion."  Id. at 1037 (quoting Francis v. Lee
Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).  The
Balagsos thus do not properly plead an independent claim of bad
faith.

        Importantly, even assuming a bad faith tort exists
outside the insurance context, "[a] party cannot breach the

15

covenant of good faith and fair dealing before a contract is formed." Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. See Young v. Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating that the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

All of Count III's allegations concern precontract activities (failing to disclose terms, failing to conduct proper underwriting, and making an improper loan). Defendants cannot be liable for breaching a contract covenant when no contract existed. See id.; see also Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Even if the Balagsos were attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach

of the implied covenant of good faith and fair dealing."
Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884
(N.D. Cal. 2010) (citation omitted). "The covenant [of good
faith] does not 'impose any affirmative duty of moderation in the
enforcement of legal rights.'" Id. (quoting Price v. Wells Fargo
Bank, 261 Cal. Rptr. 735, 742 (Cal. Ct. App. 1989), modified on
denial of reh'g, 261 Cal. Rptr. 735 (Cal. Ct. App. 1989)).

Accordingly, Count III is DISMISSED. Because further
amendment would be futile, dismissal of Count III is without
leave to amend. This dismissal is as to all Defendants. See
Omar, 813 F.2d at 991.

E.    Count IV (TILA).

Alleging that Defendants violated TILA in issuing the
mortgage and loan, the Balagsos seek rescission and damages. See
Compl. ¶¶ 61-70. As explained below, the court concludes that
the Balagsos' TILA rescission claim is subject to dismissal as to
all Defendants because the Balagsos lack a timely rescissionary
remedy for any asserted violations of TILA (and are precluded
from asserting any right to equitable tolling). See 15 U.S.C.
§ 1635(a). The Balagsos' TILA damages claim is subject to
dismissal as to Aurora and MERS because their motion to dismiss
challenges the Complaint on statute of limitations grounds and
the Balagsos fail to plausibly argue that equitable tolling may
apply. 15 U.S.C. § 1640(a); Hubbard v. Fidelity Fed. Bank, 91

17

F.3d 75, 79 (9th Cir. 1996).  However, because BNC and Dana
Capital are not moving parties and have not sought to assert the
affirmative defense of statute of limitations, the court declines
to dismiss the Balagsos' TILA damages claim <u>sua sponte</u> as to
these nonmoving Defendants.

Under TILA, borrowers have the right to rescind certain
credit transactions in which the lender retains a security
interest in the borrower's principal dwelling.  15 U.S.C.
§ 1635(a).  The borrower has the right to rescind the transaction
for three business days following the later of the date of the
transaction's consummation or the date of the delivery of the
information, rescission forms, and material disclosures required
by TILA.  <u>Id.</u>  If the required information, rescission forms, or
material disclosures are not delivered by the creditor, the right
to rescind expires three years after the transaction's
consummation.  <u>Id.</u> § 1635(f); <u>King v. Cal.</u>, 784 F.2d 910, 915
(9th Cir. 1986).  The statute of limitations applicable to TILA
rescission is not subject to equitable tolling.  <u>See</u> <u>Beach v.
Ocwen Fed. Bank</u>, 523 U.S. 410, 411–13 (1998).

Pursuant to the statute and Regulation Z, 12 C.F.R.
Pt. 226, a borrower may exercise the right to rescind by
notifying the creditor of his intention to do so.  <u>See</u> 15 U.S.C.
§ 1635(a); 12 C.F.R. § 226.23.

The Balagsos allege that the transaction was

consummated "on or about" September 23, 2006.  See Compl. ¶ 2.

Even assuming the Balagsos were entitled to the extended

rescission period, their time to rescind the loan expired three

years from that date, in September 2009.  The Balagsos did not

file their Complaint seeking rescission until January 2011.

Because more than three years have passed, the Balagsos cannot

rescind their loan.[5]

The Balagsos' damage remedy under TILA is also

time-barred as to Aurora and MERS.  A TILA plaintiff may seek

actual damages for a lender's failure to provide proper

disclosures.  See 15 U.S.C. § 1640(a).  Under 15 U.S.C.

§ 1640(e), however, an action for damages by a private individual

must be instituted "within one year from the date of the

occurrence of the violation."  The Ninth Circuit has interpreted

this to mean that the limitations period for a damage claim based

on allegedly omitted or inaccurate disclosures begins on "the

date of consummation of the transaction."  King, 784 F.2d at 915;

see also Hubbard, 91 F.3d at 79 (holding that when a lender fails

to comply with TILA's initial disclosure requirements, a borrower

---

[5] The Balagsos oppose the motion to dismiss "[u]nder the
Fed.Civ.P Rule 56 procedure[.]"  See Pls. Responsive to (Aurora
Services, LLC) and MERS (Mortgage Electronic Registration
Systems, Inc., Defs' Claim for Mot. Dismiss ("Opp'n") at 4, ECF
No. 28.  However, on a motion to dismiss, the court is bound by
Iqbal and Twombly, not Rule 56.  There are no facts suggesting
the Balagsos sought to rescind at any time prior to the filing of
the Complaint, and any attempt by the Balagsos to rescind earlier
is within their knowledge and does not require discovery.

has one year from obtaining the loan to file suit).  To the extent the Balagsos seek money damages for TILA violations arising out of the September 2006 loan, those claims against Aurora and MERS are barred by the one-year statute of limitation, as the Balagsos did not file their Complaint until January 13, 2011.

The Balagsos argue that the statute should be equitably tolled because there are "factual questions . . . to be resolved" and they should have a "reasonable opportunity to discover facts giving rise to a TILA claim."  See Opp'n at 3-4.  Courts may toll the limitations period if the one-year rule would be unjust or would frustrate TILA's purpose.  See King, 784 F.2d at 915.  For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations.  Id.; see also Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1120 (9th Cir. 2006) (explaining that tolling the statute of limitations is a factual determination that "focuses on whether there was excusable delay by the plaintiff and may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim").

The Balagsos do not point to any specific information that was concealed or even allege that any specific matter somehow prevented them from discovering any potential TILA claim.

The acts of qualifying the Balagsos for a loan they could not repay, failing to make disclosures, charging "exorbitant fees," and transferring the loan do not suggest that Defendants sought to conceal information from the Balagsos about what they were legally entitled to have received. It therefore appears that any TILA money damage claim arising out of allegedly inaccurate or incomplete disclosures is time-barred as to Aurora and MERS. Cf. Hubbard, 91 F.3d at 79 (denying equitable tolling because borrower had the ability to compare the initial disclosures she received with TILA's requirements and thereby learn that the loan disclosures were inadequate).

        In considering the TILA damage claims against nonmoving Defendants BNC and Dana Capital, this court takes a more restrained approach to the statute of limitations issue than it does with moving Defendants. This is the same approach this court took with respect to a TILA limitations issue in its earlier decisions in Radford v. Wells Fargo Bank, Civ. No. 10-00767 SOM/KSC, 2011 WL 1833020 (D. Haw. May 13, 2011), Casino v. Bank of Am., Civ No. 10-00728 SOM/BMK, 2011 WL 1704100 (D. Haw. May 4, 2011), and Asao v. Citi Mortgage, Inc., Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011). Here, Aurora and MERS have placed the limitations issue squarely before the court in their motion and have met their burden with respect to this affirmative defense. The Balagsos were obligated to address this issue in

response.  Other Defendants, by contrast, have as of yet made no showing of carrying their burden on this affirmative defense.

This court hesitates to dismiss claims sua sponte in reliance on an affirmative defense that has not been raised.  The court concludes that, with respect to nonmoving Defendants, the better course is either to allow the Balagsos to be heard on the issue via the issuance of an order to show cause why a claim should not be dismissed for untimeliness, or to wait for other Defendants to bring their own motion on the issue.  Although it does appear to this court that the Balagsos may face a limitations problem with their TILA damage claim against nonmoving Defendants, this court declines to dismiss sua sponte on the limitations issue and opts to wait for a motion by Defendants that have yet to move.  The court sees little likelihood that, having failed to establish equitable tolling of the limitations period with respect to Aurora and MERS, the Balagsos could establish that equitable tolling overcomes the limitations statute with respect to TILA damage claims against nonmoving Defendants.  Still, to deny the Balagsos the opportunity to make that attempt would be tantamount to requiring a plaintiff to include averments about equitable tolling in a complaint.  Such a requirement would turn the concept of an affirmative defense on its head; it would require a plaintiff to address an affirmative defense before it was even raised by a

defendant and would entirely erase a defendant's burden to assert and establish an affirmative defense.

The court, of course, is aware that any claim may be dismissed under Rule 12(b)6 on limitations grounds when that ground is "apparent on the face of the complaint." <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010). A <u>sua sponte</u> dismissal, however, does not have the benefit of the adversarial system contemplated by a motion brought under Rule 12(b)(6). This gives the court pause even though the court would apply Rule 12(b)(6) tenets to a <u>sua sponte</u> dismissal. Thus, the court notes that the Ninth Circuit was examining an element of a claim on which the plaintiff had the burden of proof when it said in <u>Omar</u> that a court may dismiss a claim <u>sua sponte</u> if "the claimant cannot possibly win relief. 813 F.2d at 991. As the limitations period is a matter on which a defendant bears the burden, this court does not here <u>sua sponte</u> dismiss the damage claim against BNC and Dana Capital on statute of limitations grounds.[6]

Accordingly, the court GRANTS the motion to dismiss the Balagsos' TILA claims as to Aurora and MERS. With respect to BNC and Dana Capital, the court DISMISSES <u>sua sponte</u> the Balagsos'

---

[6] Nor does the court rely on Aurora and MERS's argument that the Complaint fails to plead reliance. <u>See</u> Mot. at 21. Reliance is not a requirement that must be pled to state a claim for statutory damages, which are available for the failure to make certain initial disclosures. <u>See</u> 15 U.S.C. § 1640.

rescission claim only.  This leaves pending the TILA damage claim against the nonmovants.

       F.   <u>Count V (RESPA).</u>

      The Balagsos' RESPA claim is also subject to dismissal. The Complaint alleges that: (1) Defendants received "egregious" fees for making the loan; and (2) the Balagsos did not receive a Housing and Urban Development settlement statement form ("HUD-1").  Compl. ¶¶ 73, 75, 77.  The Complaint asserts general violations of 12 U.S.C. §§ 2601-2617.  Compl. ¶ 72.

      Any possible claims for violations of 12 U.S.C. §§ 2603 or 2604 for failing to provide a "good faith estimate" or "uniform settlement statement" necessarily fail because there is no private cause of action for a violation of those sections. <u>See</u> <u>Martinez v. Wells Fargo Home Mortg., Inc.</u>, 598 F.3d 549, 557 (9th Cir. 2010).  Failure to provide a HUD-1 statement at the time of closing is not a viable private cause of action under RESPA.  <u>See</u> <u>Martinez</u>, 598 F.3d at 557-58 (refusing to allow a private cause of action under 12 U.S.C. § 2603, in connection with allegations that HUD-1 settlement statements were not accurately disclosed).  Thus, the court dismisses the Balagsos' claim that Defendants failed to provide a HUD-1 at closing.

      The Balagsos also appear to be asserting a RESPA claim under 12 U.S.C. § 2607 for illegal fees at closing.  To the extent Count V claims that Defendants received excessive fees,

that claim under RESPA fails as a matter of law because § 2607 does not prohibit excessive fees, provided the fees were in exchange for real estate settlement services that were actually performed by the recipient. See Martinez, 598 F.3d at 553-54 (concluding that, by prohibiting fees "other than for services actually performed," § 2607, "by negative implication, . . . cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

As for other RESPA claims not falling under §§ 2603, 2604, or 2607, the Balagsos allegations are too vague to state a claim for relief against any Defendant and are dismissed on that ground.

The movants argue that the RESPA claim is also time-barred. The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. See 12 U.S.C. § 2614. As the Balagsos have not responded to this issue, the court relies on the limitation ground as an additional basis for dismissal of the RESPA claim against the movants.

In considering the RESPA claims against nonmoving Defendants BNC and Dana Capital, this court takes a more restrained approach to the statute of limitations issue than it does with the moving Defendants. As discussed in detail with respect to the TILA claim, because a limitations defense is an

affirmative defense that a defendant has the burden of asserting and establishing, the court distinguishes between the moving and nonmoving Defendants in relying on the limitations ground. With respect to Count V, however, this distinction does not affect the result here, as there are other grounds for dismissing Count V as against nonmoving Defendants.

In summary, the court DISMISSES the Balagsos' RESPA claim without leave to amend as to (1) any claim under § 2607 asserting that a fee was "excessive" or otherwise for services that were actually performed, or (2) any claim under §§ 2603 or 2604. Allowing amendments on those matters as to any Defendant would be futile. See Martinez, 598 F.3d at 554, 557. Accordingly, because the Complaint fails to state a cause of action for violation of RESPA, the court GRANTS Defendants' motion to dismiss the RESPA claim with leave to amend. The dismissal is as to all Defendants. See Omar, 813 F.2d at 991. If the Balagsos choose to amend their RESPA claim, they may want to consider whether they could overcome the limitations issue with respect to BNC and Dana Capital.

> G.   Count VI (Rescission).

Count VI asserts that "Plaintiff[s] [are] entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of

which provides independent grounds for relief." Compl. ¶ 80.  As
the court noted with respect to the remedies sought in Counts I
and II, the remedy sought in Count VI (rescission) "is only a
remedy, not a cause of action."  Bischoff v. Cook, 118 Haw. 154,
163, 185 P.3d 902, 911 (Ct. App. 2008).  The remedy thus "rises
or falls with [the] other claims."  Ballard, 2010 WL 5114952, at
*8 (alteration in original).  Indeed, as alleged here, Count VI
specifically acknowledges that it is seeking rescission based
upon "independent grounds for relief."

Accordingly, Count VI is DISMISSED without leave to
amend.  The court will address the merits of rescission when
addressing any independent claim allowing rescission.  The
dismissal is as to all Defendants.  See Omar, 813 F.2d at 991.

H.    Count VII (Unfair and Deceptive Acts and
      Practices).

Count VII alleges that all Defendants are liable for
Unfair and Deceptive Acts and Practices by failing "to properly
adjust and disclose facts and circumstances relating to
Plaintiff[s]' mortgage loan and placed Plaintiff[s] in a loan
. . . which they should never have been approved for because they
could not afford it."  Compl. ¶ 85.  The Balagsos allege that
Defendants "failed to undergo a diligent underwriting process,"
and had "knowledge of these facts, circumstances and risks but
failed to disclose them."  Id.  Count VII appears to be brought
under Hawaii's UDAP law, section 480-2(a) of Hawaii Revised

Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

The Balagsos do not state a claim under section 480-2 of the Hawaii Revised Statutes because "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender

28

of money." The claims fail on that basis alone. The court, however, cannot conclude at this time that further amendment is futile and allows the Balagsos an opportunity to amend Count VII to attempt to state a section 480-2 claim. Count VII is DISMISSED with leave to amend as to all Defendants. See Omar, 813 F.2d at 991.

### I. Count VIII (Breach of Fiduciary Duty).

Count VIII alleges, without distinguishing between various Defendants, that "Defendants owed a fiduciary duty to Plaintiff[s] and breached that duty by [f]ailing to advise or notify Plaintiff[s] . . . that Plaintiff[s] would or had a likelihood of defaulting on the loan." Compl. ¶ 90. Defendants also allegedly breached a fiduciary duty owed to the Balagsos by "exercis[ing] a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another to Plaintiff[s]." Id. ¶ 91. The Balagsos also allege that the failure to provide material disclosures "while in the capacity of Plaintiff[s]'s Lender" and "fail[ure] to fully comply with TILA and RESPA" violated Defendants' fiduciary duties. Id. ¶¶ 92-93.

Count VIII fails to state a claim against the lender Defendants, including Aurora and MERS. Aurora is a loan servicer, and MERS is the disclosed nominee for lender. See Mot.

29

at 31.  As noted earlier, a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers.  See, e.g., Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting Oaks Mgmt. Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561 (Cal. Ct. App. 2006)); Ellipso, Inc. v. Mann, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted); Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal. Ct. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature.").

McCarty, 2010 WL 4812763, at *5.

Nothing in the Complaint alleges "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation, much less a fiduciary duty owed by loan servicers like Aurora or MERS.  See, e.g., Phillips v. Bank of Am., Civ. No. 10-00551 JMS-KSC, 2011 WL 240813, at * 11 (D. Haw. Jan. 21, 2011) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . . In fact, loan servicers do not owe a duty to the borrowers of the loans they service.") (citation omitted); see also Castaneda v.

Saxon Mortg. Servs., Inc. 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009). Count VIII is DISMISSED with leave to amend as to all Defendants.

       J.    Count IX (Unconscionability).

      Count IX asserts "Unconscionability-UCC-2-3202 [sic 2-302]." Count IX further asserts that courts may refuse to enforce a contract or portions of a contract that are unconscionable, Compl. ¶ 95, and that courts are to give parties an opportunity to present evidence regarding a contract's "commercial setting, purpose and effect" to determine if a contract is unconscionable. Id. ¶ 96. It goes on to allege:

> Here, based on the deception, unfair
> bargaining position, lack of adherence to the
> regulations, civil codes and federal
> standards that the Defendants were require[d]
> to follow; coupled with the windfall that the
> Defendants reaped financially from their
> predatory practices upon Plaintiff[]s, the
> court may find that the loan agreement and
> trust deed are unconscionable and of no force
> or effect.

Id. ¶ 97.

      Unconscionability is generally a defense to the enforcement of a contract, not a proper claim for affirmative relief. See, e.g., Gaitan v. Mortg. Elec. Registration Sys., 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); see also Barnard v.

Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law nor the Uniform Commercial Code allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different or independent cause of action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable." Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[7] Skaggs dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not the breach of any specific contractual term. Id. Count IX similarly

---

[7] In Skaggs, the court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277 (2006)). This was not an indication that one could raise an affirmative claim for "unconscionability." Indeed, in Thompson, the complaint did not assert a separate count for rescission or unconscionability. See Thompson, 111 Haw. at 417, 142 P.3d at 281 (indicating that the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under Haw. Rev. Stat. § 480-2). In Thompson, the remedy of rescission was based on an independent claim. Similarly, a remedy for an unconscionable contract may be possible; a stand-alone claim asserting only "unconscionability," however, is improper. See, e.g., Gaitan, 2009 WL 3244729, at *13.

fails to identify or challenge any particular contract term as unconscionable.

Count IX is DISMISSED with leave to amend.  This dismissal is as to all Defendants.  See Omar, 813 F.2d at 991.

K.   Count X (Predatory Lending).

Count X asserts "Predatory Lending" and lists a variety of alleged wrongs (e.g., failure to disclose terms and conditions or material facts, targeting of unsophisticated persons, unfair loan terms, and improper underwriting) that form the bases of other causes of action.  Compl. ¶¶ 98-112.

The common law does not support a claim for "predatory lending."  See Haidar v. BAC Home Loans Servicing, LP, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); Pham v. Bank of Am., N.A., 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending").  To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in statutes or other common-law causes of action such as fraud.  The term "predatory lending" is otherwise too broad.  See Vissuet v. Indymac Mortg. Servs., 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend and noting that the term is expansive and fails to provide proper notice, leaving defendants "to guess whether this cause of action is based on an

alleged violation of federal law, state law, common law, or some combination"); see also Hambrick v. Bear Stearns Residential Mortg., 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending that failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.'").

Count X fails to state a cause of action. This does not, of course, mean that "predatory lending" cannot form the basis of some cause of action. Instead, the dismissal signifies that Hawaii courts have not recognized "predatory lending" itself as a common law cause of action. The ambiguous term "predatory lending" potentially encompasses a wide variety of alleged wrongdoing. The cause of action pled here fails to provide notice to any Defendant of what is being claimed. See Vissuet, 2010 WL 1031013, at *3.

Count X is DISMISSED with leave to amend as to all Defendants. The Balagsos may attempt to state a cause of action based on specific activities (which might be described as "predatory") provided that any new predatory lending claim is based on a recognized statutory or common law theory. In other words, the Balagsos may not simply reallege a general claim for "predatory lending."

L.   Count XI (Quiet Title).

Count XI alleges that Defendants have "no legal or equitable right, claim, or interest in the Property," Compl. ¶ 115, and that the Balagsos are entitled to a declaration that "the title to the Subject Property is vested in Plaintiff[s] alone." Id. ¶ 116.

The Balagsos appear to be making a claim under section 669-1(a) of Hawaii Revised Statutes.  That statute provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."  The Balagsos have not alleged sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title."  They have merely alleged elements of section 669-1 without stating a claim.  See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).  Throughout the Complaint, the Balagsos makes blanket statements about Defendants as if they were a unit.  As the court is unable to determine what rights and interests each Defendant allegedly is claiming in the Subject Property, the claim for quiet title fails.

35

Count XI is DISMISSED with leave to amend as to all Defendants.

### M.    Count XII (Lack of Standing; Improper Fictitious Entity).

Count XII asserts a claim for "Lack of Standing; Improper Fictitious Entity" against MERS.  Compl. ¶¶ 117-24. Count XII fails to state a claim because a claim for "lack of standing" may not be alleged against a defendant.  Rather, standing is a requirement for a *plaintiff* in order to proceed in a civil lawsuit.  See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (explaining requirements for plaintiffs to establish constitutional standing); Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Pub. Instruction, 634 F.3d 1065, 1067-68 (9th Cir. 2011) (explaining that plaintiffs must also establish statutory standing, when applicable).

Count XII alleges generally that MERS is an artificial entity that is "designed to circumvent certain laws and other legal requirements dealing with mortgage loans."  Compl. ¶ 120. Plaintiffs assert that an assignment of the note or mortgage to MERS is illegal, id. ¶ 121, and that therefore "MERS has no legal standing to foreclose."  Id. ¶ 124.  The Balagsos appear to be alleging that MERS may not foreclose (or has improperly foreclosed) because it is not a holder of the note.  If this is the purpose of Count XII, the court will allow the Balagsos an opportunity to clarify the factual allegations as to MERS.  The

Balagsos may, if appropriate, attempt in an Amended Complaint to assert alleged illegalities as to MERS's status in an independent cause of action, but not based on "Lack of Standing; Improper Fictitious Entity."  Accordingly, Count XII is DISMISSED with leave to amend as to MERS only.

V.        CONCLUSION.

For the reasons stated above, the court GRANTS Aurora and MERS's motion to dismiss as to all Counts.  The court dismisses all Counts sua sponte except Count IV (the TILA damage claim) with respect to BNC and Dana Capital.

With respect to all Defendants, the Balagsos are granted leave to amend part of Count V (not including "excessive" fee claims or claims made under 12 U.S.C. §§ 2603 or 2604), and the entirety of Counts VII, VIII, IX, X, and XI.  The Balagsos are further granted leave to amend part of Count IV (for damages under TILA) against BNC and Dana Capital, and the entirety of Count XII as to MERS.

Counts I, II, III, part of Count IV (for rescission under TILA), part of Count V (for "excessive" fees and for any claim under 12 U.S.C. §§ 2603 or 2604), as well as all of Count VI, are DISMISSED without leave to amend as to all Defendants.

Any Amended Complaint must be filed not later than 14 days after the date this order is filed.  If the Balagsos choose to file an Amended Complaint, they must clearly state how each

named Defendant has injured him. In other words, the Balagsos should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief. The Balagsos should not include facts that are not directly relevant to their claims.

Failure to file an Amended Complaint by the deadline will result in the automatic dismissal of all claims except the TILA damage claim in Count IV as asserted against BNC and Dana Capital. In preparing an Amended Complaint, the Balagsos are urged to meet the deficiencies identified in this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 26, 2011.



         /s/ Susan Oki Mollway
         Susan Oki Mollway
         Chief United States District Judge

Balagso v. Aurora Services, LLC, et al.; Civil No. 11-00029 SOM/BMK; ORDER GRANTING DEFENDANTS' Aurora SERVICES, LLC, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS' MOTION TO DISMISS AND PARTIALLY DISMISSING CLAIMS AGAINST NONMOVING DEFENDANTS SUA SPONTE.